[Cite as *State v. Clemons*, 2026-Ohio-257.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115030 |
| v. | : | |
| TREVONNE CLEMONS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 29, 2026

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-652340-A and CR-24-693984-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Carson M. Strang, Assistant Prosecuting
Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Aaron T. Baker, Assistant Public Defender, *for appellant*.


KATHLEEN ANN KEOUGH, J.:

{¶ 1} Trevonne Clemons ("Clemons") brings the instant appeal challenging the sentence imposed following his convictions in two separate cases. Clemons submits that prejudicial victim-impact testimony was received at the sentencing

hearing and that his trial counsel was ineffective for failing to object to the prejudicial victim-impact testimony. Clemons also challenges the trial court's decision that the sentences be served consecutively for a total of nine years. After a thorough review of the law and record, this court affirms.

{¶ 2} In September 2020, Clemons was indicted on three counts: having weapons while under disability, improperly handling firearms in a motor vehicle, and tampering with evidence ("the 2020 Case"). All three counts included a forfeiture specification for a 9 mm Ruger firearm. In August 2024, Clemons was indicted and charged with two counts of murder, two counts of felonious assault, having weapons while under disability, and tampering with evidence ("the 2024 Case"). The charges for murder and felonious assault each included one- and three-year firearm specifications. The named victim in the 2024 Case was Terry Ferguson ("Terry").

{¶ 3} The 2024 Case was tried before a jury on January 7, 2025. The jury acquitted Clemons of all charges of murder and felonious assault but found him guilty of tampering with evidence. The having-weapons-while-under-disability charge was tried to the trial court that found Clemons guilty of the charge. In the 2024 Case, Clemons was sentenced to 72 months: 36 months for the having-weapons-while-under-disability conviction and 36 months on the tampering-with-evidence conviction, ordered to be served consecutively.

{¶ 4} In the 2020 Case, Clemons pled guilty to having weapons while under disability and the attendant forfeiture specification. He was sentenced to 36

months, to be served consecutively to the sentence imposed in the 2024 Case; Clemons's combined sentence totaled 108 months, or nine years.

{¶ 5} Clemons appeals, assigning three errors for our review:

1. The trial court deprived Mr. Clemons of due process of law when it heard and took into consideration victim impact testimony when there was no such victim, rendering the proceedings fundamentally unfair.

2. The trial court's consecutive sentencing of Mr. Clemons was in error because the sentencing findings were clearly and convincingly not supported by the record.

3. Mr. Clemons received ineffective assistance of counsel under the [S]ixth [A]mendment to the United States [C]onstitution when his counsel failed to object to the presentation of and the trial court's consideration of victim impact testimony when there was no such victim.

{¶ 6} We address Clemons's first and third assignments of error together because both errors pertain to the victim-impact testimony elicited at sentencing. The first assignment of error argues that the court improperly heard and considered victim-impact testimony in derogation of Clemons's due-process rights. The third assignment of error argues that Clemons's trial counsel was ineffective for failing to object to the presentation of and the trial court's consideration of the aforementioned victim-impact testimony. Clemons argues that "[b]y implication, the jury decided that [Terry] was not a victim of any of Mr. Clemons' crimes" in acquitting Clemons of the murder charges, effectively concluding that Clemons justifiably acted in defense of another. Thus, Terry's sister should not have been permitted to give a statement, and the trial court should not have considered her statement.

**{¶ 7}** At Clemons's joint sentencing hearing, Terry's sister addressed the court.

> I'm Terry's oldest sister. This has been a long journey. My mother birthed Terry, but Terry was my son. This journey that we on right now, we shouldn't even be on. My brother just wanted to be a father. Leaving behind nine children. Also on this journey he became a granddad that [sic] he didn't get to meet this grandson.
>
> But in January, this court painted a picture like my brother was this monster. My brother was a single father whose children were abandoned. The courts awarded him custody of his children. For him trying to have a good heart — I'm going to let the mother see these children and he lost his life trying to pick them up.
>
> My brother fought hard for his children. In the courts, when they was abandoned before he was given custody, he found out that his children was being molested by some other family member's childrens [sic]. So that's why he was so adamant about where his children were that night. You're not leaving my children unsupervised.
>
> Trevonne sat in this courtroom and said he knew my brother for many years. So you [k]now how T.C. was. You knew who T.C. was that night. He had to shoot to kill because if he didn't, he knew T.C. would have been looking for him. And it's hard to have to sit in this courtroom and look at you.
>
> Like, it's hard because it's two families that's going to be hurting, not just ours. We went with the jury. The jury didn't come back with what we were expecting. That's another slap.
>
> We just ask that you just show us that grace and mercy under the law of what we would be able to receive for the justice for my brother.

(Tr. 1033-1035.)

**{¶ 8}** Following the sister's statement, the State remarked that "although we strongly disagree with the jury verdict in this case, we respect that they heard the evidence and they came back the way they did." (Tr. 1035.) The State then asked

for consecutive sentences. In asking for consecutive sentences, the State noted that Clemons "has a history of having firearms when he's not supposed to," citing previous cases in 2011, 2014, 2015, and 2018, in addition to the two offenses that Clemons was being sentenced for at that time. (Tr. 1036.) He also cited Clemons's unwillingness to follow the law, noting that Clemons attempted to evade law enforcement apprehension in both the 2020 and 2024 Cases.

{¶ 9} Clemons's counsel countered the State, noting that these two cases are felonies, but his prior criminal history only includes two fifth-degree felonies, both of which occurred about a decade prior. Counsel noted that he had six children with his partner who had been present for the entirety of trial. Clemons's mother was also present for all of the trial. He stated that Clemons felt genuine remorse and was suffering from PTSD and depression, both of which are currently being treated by medication. Based on the foregoing, his counsel requested that Clemons receive community-control sanctions and that if a period of incarceration was imposed, that the court impose the sentences concurrently. Clemons himself directed a short statement towards Terry's family, apologizing and stating that it was not his intention to take Terry's life.

{¶ 10} Since there was no objection to the victim-impact statement at sentencing, we review the alleged error for plain error. Under a plain-error analysis, the party suggesting plain error occurred bears the burden of demonstrating that (1) there is a deviation from a legal rule; (2) the error is an "obvious defect in the trial proceedings" and (3) the error must have affected a defendant's substantial rights,

i.e., must have affected the outcome of the proceedings. *State v. Barnes*, 2002-Ohio-68, ¶ 20, citing Crim.R. 52(B); *State v. Hill*, 2001-Ohio-141, ¶ 50; *United States v. Olano*, 507 U.S. 725, 732 (1993). Plain error should only be recognized in "exceptional circumstances and only to prevent a manifest miscarriage of justice." *Hill* at ¶ 46, citing *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶ 11} While sentencing Clemons, the trial court stated that the sentence "should be [commensurate] with, and not demeaning to the seriousness of your conduct, its impact on the victim, and consistent with sentences for similar crimes by similar offenders." (Tr. 1044.) The trial court provided a statement giving its reasoning for sentencing Clemons to prison and consecutive sentences:

> When I look at this case and I look at what occurred here, there was no need, no need for a firearm in this case. The law has changed in the State of Ohio and self-defense — the jury believes self-defense of another was appropriate based on the law, but if you would have followed the law yourself, you wouldn't have had a gun. A gun wouldn't have been with you and you would have used your hands to separate this, not a firearm to kill [Terry].
>
> . . .
>
> [S]o the seriousness of this is huge. You should not have had a firearm, nor should you have allowed to be possessing a firearm [sic]. Then, when I go back to the history — and I want the record to reflect that there was a time when you got arrested for another case that was indicted and at that point, you were working at Elder Crest Construction and you were scheduled to report to the probation officer.
>
> You were supervised by this [c]ourt by a [probation officer] and they wrote me a little history of your attempts to work at the — in probation. On September 23, 2020, the probation office became aware that you would be indicted in a case, [the 2020 Case], in Cuyahoga County Court

of Common Pleas, and you were charged with having a weapon while under disability, a felony three.

That arrest was occurred [sic] on March 31st of 2020. You were indicted on September 21st of 2020 and set for arraignment on that day. Due to your failure to comply with the conditions of your supervision, a probation violation was scheduled for October 27th of 2020, but you failed to appear. This Court had to issue a capias.

You were arrested on my capias on November 5th of 2020. And that same day, you were charged with having a weapon while under disability and two counts of felonious assault by the Cleveland Police Department on [the 2020 Case]. And then we set a pretrial in January of [2021] for that case.

On December 29th of 2020, the defendant generated a strap tamper alert for your GPS ankle monitor. You had GPS back then. The officer from the MU went to address it. They searched your home. They located the ankle monitor and the strap was sitting on the table in the living room.

The defendant failed to respond to contact the techs from the electronic monitoring unit officers and you were not at the residence when they searched. So they issued a capias for you on December 30th of 2020. You were arrested on that capias on February 20th of [2021]. We had a hearing on February 26th of [2021] and a sanction was held in abeyance until after the defendant's pretrial in [the 2020 Case] and [another case], which were scheduled for March the 2nd of [2021].

On April 23rd of 2021, I lifted the capias and allowed you to be on GPS, again the GPS monitoring. You were instructed on the rules of home detention again on April 26th of [2021] and were released.

On April 27th of [2021], the defendant contacted the officer and stated that you wished to reside on Hamlen Avenue at that time. Per the GPS unit, this address was in the defendant's buffer zone and defendant was advised that he was not permitted to reside there.

On May 4th of [2021], the probation department received notification that you cut off your ankle monitor and your whereabouts could not be ascertained from the Sheriff's Department. This Court issued another capias on that case. And we, again — then all of sudden, you get picked

up and now there was a firearm involved and there was another shooting and someone got killed.

Trevonne, I explicitly told you that you were not allowed to have any firearms, any guns, you were under indictment. You could not — you have previously been told by a court that you can't have that and you chose to go on and you needed to have a gun. And you know? As a result, here we sit.

Someone lost their life. We had all of this because you couldn't follow the law. So when I look at what my duties are and I have to — what is the purpose and principles of sentencing, you admitted that you had a gun on this March 31st of 2020. But, again, you already knew you shouldn't have had a firearm.

In this other case in 2022, you knew you weren't allowed to have a firearm. You fled from the court. These are all factors that this Court looks at in determining a sentencing. So I say all of that because I believe that a prison sentence is appropriate in this matter.

(Tr. 1045-1049.)

{¶ 12} We do not find that this presents the exceptional circumstance where we recognize plain error. While Clemons focuses on the trial court's initial statement that its sentence should be commensurate with "its impact on the victim," the trial court indicated numerous other reasons justifying its decision to incarcerate Clemons and run the sentences consecutively. The trial court's statement specified that it considered Clemons's repeated disobedience of the law, courts, and the probation department and supported these statements with a short history of the entire matter, displaying all the times that Clemons had deviated from the mandates of the law and his probation, and indeed shot Terry while on probation in a prior case dealing with his illegal firearm possession. Based on the trial court's

statements, we cannot say that without the victim-impact statement, the trial court's sentence would be any different.

{¶ 13} We now address Clemons's third assignment of error, in which he argues that his trial counsel was ineffective for failing to object to the provision of a victim-impact statement at sentencing.

{¶ 14} To show that his trial counsel was ineffective, Clemons was required to prove that his counsel's performance fell below an objective standard of reasonable representation and that the deficiency prejudiced him. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).

{¶ 15} In the first assignment of error, we found that the victim-impact statement was not prejudicial to Clemons because of the myriad other reasons that the trial court recounted in fashioning a sentence. "The failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Knox*, 2013-Ohio-1662, ¶ 20 (8th Dist.), citing *State v. Ford*, 2007-Ohio-5722, ¶ 9 (8th Dist.). Having found that the victim-impact statement in and of itself was not prejudicial, counsel's alleged failure to object to a nonprejudicial victim-impact statement would have been futile and thus, we must find that Clemons has not persuaded us that his counsel's alleged deficiency has prejudiced him.

{¶ 16} In accordance with the foregoing, we overrule Clemons's first and third assignments of error.

{¶ 17} Lastly, we turn to Clemons's second assignment of error that contests his consecutive sentences. Clemons particularly argues that "the trial court likewise based its consecutive sentence findings on the same improper considerations argued in" the first assignment of error. Clemons concedes that the trial court made "the findings necessary to impose consecutive sentences" but instead argues that "the record makes clear that there was no logical, reasonable, or legal basis for those consecutive sentences."

{¶ 18} A trial court may impose consecutive sentences when the law specifically permits it to do so, such as making specific findings as provided by R.C. 2929.14(C)(4). *State v. Glover*, 2024-Ohio-5195, ¶ 38, citing R.C. 2929.41(A). Clemons concedes that the trial court made all the necessary findings pursuant to R.C. 2929.14(C)(4). R.C. 2953.08(G)(2) "requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, 2023-Ohio-3851, ¶ 5. Here, we cannot clearly and convincingly find that the record does not support the trial court's findings for consecutive sentences, and Clemons concedes as much. We accordingly overrule Clemons's second assignment of error.

{¶ 19} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR